UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH L. WILSON,

       Petitioner,

v.                                   Case No:   2:12-cv-265-FtM-38CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____/

## OPINION AND ORDER[2]

      This matter comes before the Court upon a petition for habeas corpus relief filed

pursuant to 28 U.S.C. § 2254 by Joseph L. Wilson ("Petitioner), who is presently confined

at the Taylor Correctional Institution Annex in Perry, Florida (Doc. 1).   Petitioner,

proceeding *pro se*, attacks the convictions and sentences entered by the Twentieth

---

[1] The United States Supreme Court has recognized that there "is generally only one proper respondent to a given prisoner's habeas petition." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).   This is "the person with the ability to produce the prisoner's body before the habeas court." *Id.* at 435-36.   When the petitioner is incarcerated and challenges his present physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." *Id.* at 436 (citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections.   Therefore, the State of Florida and the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Judicial Circuit Court for Hendry County, Florida in case number 1993-09-CF for first degree murder and attempted robbery with a firearm. *Id.* Respondent filed a response to the petition, and Petitioner filed a reply (Doc. 14; Doc. 19).

Petitioner raises five claims in his petition. Specifically, Petitioner asserts that: (1) the trial court erred by permitting the prosecutor to comment on Petitioner's refusal to allow audio recording of his statement to the police; (2) he was tried and convicted on an "improperly returned" indictment; (3) counsel was ineffective for failing to move to dismiss his case after his speedy trial time had run; (4) newly discovered evidence shows that counsel was ineffective for failing to properly advise Petitioner of his sentence exposure; and (5) double jeopardy was implicated by Petitioner's convictions for both felony murder and first degree murder (Doc. 1).

Upon due consideration of the petition, response, reply, and the state court record, the Court concludes that the petition must be denied. Because the petition can be resolved on the basis of the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.    **Background**

On February 11, 1993, Petitioner was indicted by grand jury on one count of first degree premeditated murder (count one), one count of first degree felony murder (count two), and one count of attempted robbery with a firearm (count three) (Ex. 1).[3]

---

[3] The referenced exhibits are those filed by Respondent on December 31, 2012 (Doc. 16). References to the trial transcript, located in Respondent's exhibit 10, are cited as (T. at ___).

On January 18, 1994, defense counsel requested a continuance in order to review lab reports and noted that Petitioner's speedy trial rights had been waived (Ex. 2). Defense requested additional continuances on March 28, 1994 and August 1, 1994 (Ex. 3; Ex. 4).   On February 9, 1995, defense counsel filed a motion to dismiss on constitutional speedy trial grounds and a motion for discharge under Florida's speedy trial rule (Ex. 5; Ex. 6).   The motions were heard and denied on April 4, 1995 (Ex. 9).

In June of 1995, Petitioner was tried by jury (Ex. 10).   He was found guilty as charged on all counts (Ex. 11).   Petitioner was sentenced to life in prison without the possibility of parole for twenty-five years on the murder charges and to a consecutive fifteen year sentence on the attempted robbery charge (Ex. 12).   Petitioner's convictions and sentences were *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. 16); *Wilson v. State*, 697 So. 2d 149 (Fla. 2d DCA 1997).

On February 1, 1999, Petitioner filed his first motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 17; Ex. 18).   The motion was denied by the post-conviction court, and Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 23; Ex. 24).   Petitioner filed a second Rule 3.850 motion on May 15, 2000 (Ex. 23).   The post-conviction court denied the motion, and Florida's Second District Court of Appeal *per curiam* affirmed the denial (Ex. 24); *Wilson v. State*, 781 So. 2d 370 (Fla. 2d DCA 2000).   Petitioner filed a third Rule 3.850 motion on February 13, 2006 in which he alleged newly discovered evidence in the form of misadvise on the part of trial counsel (Ex. 31).   The post-conviction court concluded that none of the grounds for relief raised in the motion qualified as newly discovered evidence, and the motion was dismissed as untimely (Ex. 32).

On June 21, 2004, Petitioner filed a state petition for writ of habeas corpus in which he alleged that he was tried on an indictment that was not properly returned in open court (Ex. 25).   The petition was denied on July 22, 2004 without a written opinion (Ex. 26).

On June 9, 2005, Petitioner filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Ex. 27).   The motion was denied by the state circuit court, and the denial was affirmed by Florida's Second District Court of Appeal (Ex. 28; Ex. 29); *Wilson v. State*, 928 So. 2d 522 (Fla. 2d DCA 2006).   Petitioner filed a second motion to correct an illegal sentence on June 13, 2006 (Ex. 34).   The motion was granted in part and denied in part, and Petitioner was resentenced on August 29, 2007 (Ex. 35; Ex. 36).   The appellate court affirmed the resentencing as orally pronounced by the sentencing court, but noted that the written judgment and sentence made it appear as if Petitioner was serving two life sentences on two separate first degree murder convictions.   The court recognized that "[t]here is nothing in the record to suggest that these were anything more than clerical errors" and remanded for the trial court to enter a corrected written judgment and sentence (Ex. 37); *Wilson v. State*, 56 So. 3d 912, 913 (Fla. 2d DCA 2011).

Petitioner signed the instant habeas petition (Doc. 1) on May 8, 2012.

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.   *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 134 S.Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The unreasonable application inquiry

"requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.   Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).   When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*); see e.g. Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

## B.   Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish

that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**C.     Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)     the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> > > (i)   there is an absence of available State corrective process; or
> >
> > > (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims

procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "[t]o be

credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

**III.    Discussion**

    **A.    Claim One**

Petitioner asserts that the prosecutor made improper comments about Petitioner's right to remain silent (Doc. 1 at 5).   Specifically, Petitioner asserts that the prosecutor's question to the jury during rebuttal closing argument asking why Petitioner would refuse to "go on tape" with the police during his interview was an impermissible comment on Petitioner's failure to testify. *Id.*   Petitioner raised this issue on direct appeal where it was denied.   Respondent counters that, when read in context of Petitioner's trial, the prosecutor's statement was not a constitutional violation because she did not comment on Petitioner's refusal to talk to police; rather, the comment was directed solely at Petitioner's refusal to be <u>taped</u> during his voluntary interview with the police (Doc. 14).

A review of the record indicates that the police's failure to tape its interview with Petitioner was at issue throughout his trial.   The trial transcript shows that after he was apprehended by the police, Petitioner was read his rights under *Miranda*[4] and voluntarily spoke with police officer Synda Williams ("Williams").   Williams testified at trial as follows:

---

    [4] *Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that statements made in response to interrogation by a defendant in police custody will be admissible at trial only if the prosecution can show that the defendant was informed of the right to consult with an attorney before and during questioning and of the right against self-incrimination before police questioning, and that the defendant not only understood these rights, but voluntarily waived them).

| WILLIAMS: | The defendant spoke with us and we asked the defendant where his – where he had been on the 29th of December. |
|---|---|
| STATE: | And is this statement taped? |
| A. | No, it is not. |
| Q. | Why not? |
| A. | Because the defendant declined to go on taped statement. |
| Q. | He didn't want to be on tape? |
| A. | That's correct. |
| Q. | And what did he tell you? |
| A. | He stated that he had been in Clewiston with friends or relatives. |
| Q. | About the time of the shooting? |
| A. | Yes. |
| Q. | Was his statement consistent with your investigation, about being in Clewiston at the time of the shooting? |
| A. | No. |

(T. at 778-79).[5]   On cross-examination, defense counsel questioned the accuracy of Williams' testimony due to the lack of a tape recording of Williams' interview with Petitioner.   Defense counsel also suggested that Petitioner had not actually told Williams that he was in Clewiston at the time of the murder as she had testified (T. at 788-90). During the defense's case, defense counsel called police officer William Teal and

---

[5] Petitioner does not assert that the prosecution's questions to Williams regarding whether the interview was taped implicated any constitutional concerns.   Accordingly, only the comment made during closing argument is at issue in this Order.

questioned him about the lack of a tape recording of Petitioner's interview (T. at 959).[6]

Teal testified that interviews are generally taped "unless the individual did not want to put

it on cassette tape[.]" (T. at 959).   Teal further noted that Petitioner had not wanted his

statements taped. *Id.* at 960.   In closing argument, defense counsel again questioned

the accuracy of Williams' investigation, noting that she hadn't recorded her interview with

Petitioner and suggesting that Williams' handwritten notes of the interview were sloppy

(T. at 1075-76).[7]

In the state's rebuttal closing argument, the prosecutor summarized the evidence

as follows:

> Let's summarize a little bit of the testimony that you've heard.
> Who did Mark Brown say had asked him for money earlier that
> day?   Joseph Lamar Wilson.   Who did Mark Brown say went
> up to the Jeep and pointed the gun at the man and shot him?
> Joseph Lamar Wilson.
>
> Who did Broderick Campbell hear say, Cracker, give it up,
> give it up, Cracker?   Joseph Lamar Wilson.
>
> Who did Mary Coronado overhear bragging about the killing
> and the decal on the tag, killed him for the fun of it?   Joseph
> Lamar Wilson.
>
> Who did Craig Brooks say had a nine millimeter and killed the
> man in the Jeep?   And what kind of bullet came from the
> victim?   Craig Brooks said Joseph Lamar did it.
>
> Who told Daryl Bess that he killed a white man for the fun of
> it?   Joseph Lamar Wilson.   Who intimidated Daryl Bess in
> jail to write a letter to the defense attorney?   Joseph Lamar

---

[6] During the state's case in chief, Officer Teal testified that Petitioner had indicated to the police that he would talk with them "but he didn't want to put it on a tape recorder, but he would talk to us." (T. at 833).

[7] The prosecutor's statement at issue was made in rebuttal argument, after defense counsel's arguments.

> Wilson.   Who did Daryl Bess tell Mary Coronado he was afraid of?   Joseph Lamar Wilson.
>
> Who did Tanya Fletcher hear say, Cracker, give it up, give it up, Cracker, in the Jeep?   Joseph Lamar Wilson.   And who did Tanya Fletcher see go up to the Jeep with a gun?   Joseph Lamar Wilson.
>
> Who wanted to get out of town with Tanya Fletcher right after the shooting? Joseph Lamar Wilson. And who tried to get Tanya Fletcher to lie about his whereabouts that night? Joseph Lamar Wilson.
>
> Who lied to the police about being in Clewiston that night, the night of the shooting?   Joseph Lamar Wilson.
>
> Who did Broderick Campbell say went up to the Jeep to rob the man and shot him?   Joseph Lamar Wilson.   And who did Derrick Ned, the defendant's own brother, tell Investigator Williams right after the shooting happened who had pointed the gun and shot the man in the Jeep?   He said Joseph Lamar did it.
>
> Ladies and gentleman of the jury, it doesn't take Einstein to figure this one out.   Joseph Lamar Wilson is the murderer in this case.   If he didn't do it, why run away?   If he didn't do it, why get Tanya Fletcher to lie for him?   If he didn't do it, why did he try to get out of town?   **If he didn't do it, why wouldn't he go on tape with the police?   Why wouldn't he give a taped statement if he didn't do it?**

(T. at 1103-06) (emphasis added).   Defense counsel objected to the last statement, arguing that it was a comment on Petitioner's right to remain silent. *Id.*   The trial court overruled the objection, stating that the prosecutor's statement was merely a comment on the evidence, but cautioned the prosecutor not to "get in any part about why he didn't come forward or testimony about any evidence." *Id.*   Petitioner raised the issue again on direct appeal where he argued that, under Florida law, "any comment which is 'fairly susceptible of being interpreted as a comment on silence will be treated as such." (Ex. 14 at 32) (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (internal quotations

- 13 -

omitted)).   Petitioner now argues that the prosecutor's statement about his refusal to allow the police to tape his interview was an impermissible comment on his Fifth Amendment right to remain silent which violates the United States Supreme Court 's ruling in *Griffin v. California*, 380 U.S. 609 (1965) (Doc. 1 at 5).

*Griffin* does not aid Petitioner because that case did not deal with a prosecutor's comment regarding a defendant's interview with the police.   Rather, the *Griffin* court determined that it is a violation of a defendant's Fifth Amendment right for the prosecution to comment on a defendant's failure to testify at trial.   More applicable to Petitioner's case is the Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610 (1976).   In *Doyle*, the Supreme Court concluded that the use of a defendant's silence at the time of arrest and after receiving *Miranda* warnings in an effort to impeach him at trial violates the Due Process Clause of the United States Constitution and its guarantee against fundamental unfairness. *United States v. Miller*, 255 F.3d 1282, 1285 (11th Cir. 2001) (citing *Doyle v. Ohio*, 426 U.S. 610 (1976)).   Such improper use occurs when a prosecutor "call[s] attention" to the defendant's silence. *Id.*   The *Doyle* rule "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Hill v. Turpin*, 135 F.3d 1411, 1413 (11th Cir. 1998) (internal quotation marks omitted).

However, although *Doyle* is somewhat more applicable than *Griffin* to the factual scenario before this Court, the issue still does not fall squarely under *Doyle*.   Unlike the defendants in *Doyle*, Petitioner did not invoke his *Miranda* right to remain silent; rather, he waived his right to remain silent, but refused to commit to audio tape the same information he relayed orally to the police.   Therefore, the precise issue before this Court

is whether a defendant's refusal to allow his statements to police to be memorialized may be commented upon by the state at trial.   The Supreme Court has not issued an opinion in a case with materially indistinguishable facts.

Because of the lack of a United States Supreme Court case directly on point, the state court's ruling could not have been "contrary to" clearly established federal law under the AEDPA. *See Carey*, 549 U.S. at 76-77.   Therefore, this Court's inquiry must focus on whether the state court's adjudication of this claim involved an "unreasonable application" of existing Supreme Court precedent. *See* 28 U.S.C. § 2254(d).   As noted, a state court decision involves an unreasonable application of Supreme Court precedent only when it applies the facts of a petitioner's case in an objectively unreasonable manner.   The courts that have addressed similar "failure to memorialize" issues are divided. *Compare Strickland v. Lee*, 471 F.Supp.2d 557, 623 (W.D.N.C. 2007) (finding that when a petitioner indicated that he did not want to provide a written statement of the information he had told police, it was not an invocation of his right to silence); *State v. Parks*, 280 P.3d 766 (Kan. 2012) ("[A] defendant's refusal to memorialize his or her statement in a particular form is not equivalent to an invocation of the right to silence implicating *Doyle*."); *Crosby v. State*, 784 A.2d 1102, 1108-09 (Md. 2001) (testimony that a defendant "refus[ed] to put into writing that which had already been spoken" was not a violation of the write to remain silent); *with United States v. Jenkins*, 499 F.Supp.2d 1268, 1276 (M.D. Fla. 2007) ("To be sure, there is a distinction here in that defendant did not invoke a right to discontinue making verbal statements. Rather, he declined to memorialize his verbal statements in a sworn written statement. However, this is not a distinction which diminishes [defendant's] *Doyle* position."); *Arnold v. Runnels*, 421 F.3d 859, 864 (9th Cir. 2005) (noting that a

defendant can "invoke [ ] his *Miranda* rights selectively, with respect to a tape-recorded interrogation").

In *United States v. Jenkins*, the Middle District of Florida recognized that the authority on this issue was not well settled:

> There is some authority that a defendant who agrees to speak following advisement of *Miranda* warnings has, in some circumstances, waived his *Miranda* rights, thus losing any protection against comments on his subsequent silence. *See, e.g., Anderson v. Charles*, 447 U.S. 404, 408, 100 S. Ct. 2180, 65 L.Ed.2d 222 (1980) (explaining that *Doyle* bars use of post-*Miranda* silence but that prosecution may fairly probe content of post- *Miranda* inconsistent statements without breaching bar against use of silence); *Lofton v. Wainwright*, 620 F.2d 74, 78 (5th Cir. 1980) (holding that once a defendant "chooses to contradict his post-arrest statements to the police . . . it becomes proper for the prosecutor to challenge him with those statements and with the fact that he withheld his alibi from them," which may result in the jury learning that he exercised his right to silence); *United States v. Burns*, 276 F.3d 439, 442 (8th Cir. 2002) (holding that prosecutor's comment on defendant's silence in response to one question and eventual refusal to answer further questions did not violate *Doyle* because they were in context of otherwise admissible conversation). However, in these and other cases reviewed, the courts' determinations that comments on post- *Miranda* silence were permissible rely at least in part on the purpose for and context within which such commentary was being offered. *See Lofton*, 620 F.2d at 78-79 (explaining that because defendant testified to an exculpatory story that contradicted explanation given to police, "all of the post-arrest utterances and the circumstances under which they were made may well become relevant and admissible"); *Burns*, 276 F.3d at 442 (noting that comment on silence was admissible because it was in context of otherwise admissible conversation which was highlighted by prosecution to show contrast with defendant's "transparently frivolous" exculpatory evidence). *See also United States v. Beechum*, 582 F.2d 898, 906 (5th Cir.1978) (en banc), cert. denied, 440 U.S. 920, 99 S. Ct. 1244, 59 L.Ed.2d 472 (1979) (finding no improper reference to silence under *Doyle* where prosecutor asked why defendant did not give exculpatory statement to police that he offered at trial and holding that prosecutor's statement was

"not a comment on Beechum's silence but rather an appraisal of what Beechum said").

499 F.Supp.2d at 1275. Judge Corrigan determined that a prosecutor's comment on a defendant's refusal to provide a written statement after an interview with police violated *Doyle*. *Id.*  However, *Jenkins* did not involve a § 2254 habeas petition, and the *Jenkins* court was not constrained by the AEDPA's deferential standard of review.[8]

Regardless of what the correct answer may be as a matter of constitutional law, this Court is constrained by the scope of review under the AEDPA.   There is jurisdictional disagreement on this issue, and no clear Supreme Court direction exists.   Reasonable minds have differed in interpreting *Doyle*'s application in "refusal to memorialize" cases. In order for this Court to grant a habeas petition on this issue, it would not only have to adopt the line of cases concluding that a defendant's refusal to record his statement is an invocation under *Miranda*, but also hold that the competing line of cases "unreasonably applied" *Doyle* and its progeny. This Court cannot conclude that the courts that have rejected arguments similar to those at hand used reasoning "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702.   To the contrary, it is reasonable to think that a defendant who answers questions and consents to an interview with the police has waived subsequent comment on his refusal to record the interview, especially, as in this case, when defense counsel has implied that it was error for the police not to record the interview, and to suggest that the Defendant did not actually say what the officer testified to. *See Brown v. State*, 771 So. 2d 603 (Fla. 4th DCA 2000) ("A

---

[8]  The order in *Jenkins* was issued in response to a criminal defendant's motion for a new trial.

narrow exception to the rule forbidding a comment on a defendant's failure to testify applies where the prosecution's statement is invited by the defense.").

The Florida courts did not contradict the Supreme Court, nor did it unreasonably apply its precedents when it rejected this claim. Under the AEDPA, this ends the inquiry. Petitioner is not entitled to federal habeas relief on Claim One.

**B.    Claim Two**

Petitioner asserts that his constitutional rights were violated under the Sixth and Fourteenth Amendments to the United States Constitution because the grand jury's indictment was not "properly returned in open court as dictated by Florida law, thus rendering the instrument of indictment void." (Doc. 1 at 8).    Petitioner attempted to raise this claim in his first Rule 3.850 motion, but the post-conviction court dismissed the claim as procedurally barred because it should have been raised on direct appeal (Ex. 20 at 2). The dismissal of this claim was affirmed by Florida's Second District Court of Appeal (Ex. 24).

Respondent urges that because this claim was dismissed as procedurally barred in state court, it is now procedurally barred from review in this Court (Doc. 14 at 12).[9] This Court agrees.    Before requesting a federal court to issue a writ of habeas corpus, a petitioner must present his claims to the state courts in a procedurally correct manner.

---

[9]  Respondent also notes that the claim can be denied on the merits because "the record shows that the indictment was returned in open court. *Id.*   Indeed, Petitioner's assertions in Claim Two are perplexing because Respondent's exhibit one contains the indictment by the grand jury which charged Petitioner with first degree murder and attempted robbery (Ex. 1).   Petitioner does not explain how this indictment was defective. Rather, he asserts that it was never filed in open court (Ex. 18).   However, the signature of the foreman of the grand jury sates that it was "Present in open Court by the Grand Jury and filed February 11, 1993." *Id.*

*Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). Claim Two, liberally construed, raises a claim of trial court error. The procedurally correct way for Petitioner to have raised a claim of trial court error in the Florida State courts is by direct appeal. *See Henry v. State*, 933 So. 2d 28, 29 (Fla. 2d DCA 2006) ("Henry's claims of prosecutorial misconduct and trial court error should have been raised on direct appeal."); *Sampson v. State*, 845 So.2d 271, 272 (Fla. 2d DCA 2003) (claims of trial court error should be raised on direct appeal).

In his reply, Petitioner does not disagree that the claim was procedurally defaulted, and does not address Respondent's assertion that Claim Two fails on the merits, but argues instead that any default of Claim Two is excused under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) because his appellate counsel was ineffective for failing to raise the claim on direct appeal (Doc. 19 at 7). Petitioner's reliance on *Martinez* is misplaced.

In *Martinez*, the United States Supreme Court held that procedural default will not bar a federal habeas court from hearing substantial claims of ineffective assistance of counsel at trial if, in initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.[10] *Martinez'* equitable rule applies solely to ineffective assistance of <u>trial</u> counsel claims and has not been interpreted to excuse the procedural default of all claims not raised on direct appeal. *Martinez*, 132 S. Ct. at 1315. The Supreme Court explained that "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to

---

[10] In 2013, the Supreme Court confirmed that the *Martinez* ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013).

initial-review collateral proceedings for claims of **ineffective assistance of counsel at trial**." *Id.* at 1316. (emphasis added).   The Court continued:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (internal citations omitted).   Under this reasoning, *Martinez* does not apply to Petitioner's claim that his indictment was defective under Florida law.

The alleged ineffectiveness of Petitioner's appellate attorney cannot constitute cause for the default of this claim of trial court error.   Generally, a federal court reviewing a habeas petition cannot consider an ineffective assistance of counsel claim as cause for a procedural default of another claim if the ineffective assistance claim itself was procedurally barred. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000); *Carrier*, 477 U.S. at 489 ("[A] claim of ineffective assistance" generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").   Petitioner has not shown independent cause and prejudice excusing the default of the ineffective assistance of appellate counsel claim.   Thus, Petitioner cannot rely on ineffective assistance of appellate counsel to excuse his default because he did not raise an ineffective assistance of appellate counsel claim in state court.

Because Petitioner failed to properly raise Claim Two in appropriate state court proceedings, resulting in the application of a procedural bar by the state courts, Claim Two is likewise procedurally barred from review in this federal court.   Furthermore,

Petitioner has not shown that he is entitled to the fundamental miscarriage of justice exception.   Claim Two is dismissed as unexhausted and procedurally barred.

### C.   Claim Three

Petitioner asserts that trial counsel was ineffective "for failing to file a motion to dismiss after the speedy trial time had run." (Doc. 1 at 9).   Petitioner asserts that he raised this issue as ground three of his first Rule 3.850 motion. *Id.*   However, a review of that motion reveals that ground three was not raised as a claim of ineffective assistance of counsel (Ex. 18).   Rather, Petitioner argued in his Rule 3.850 motion that Florida's speedy trial rule was violated because he was not brought to trial within 175 days of being charged. *Id.*   The post-conviction dismissed the claim as procedurally barred because it should have been raised on direct appeal (Ex. 20 at 2).   The dismissal of this claim was affirmed by Florida's Second District Court of Appeal (Ex. 24).   Respondent urges that this claim is unexhausted and procedurally barred because it was not raised at all in the state courts (Doc. 14).   Respondent also argues that Petitioner's claim is without merit because defense counsel actually did file a motion to dismiss on speedy trial grounds, and Petitioner's allegation of deficient performance is refuted by the record. *Id.* at 14.

In his reply, Petitioner seeks to excuse his procedural default of this claim under *Martinez* because the state did not appoint him counsel to prepare his Rule 3.850 motion (Doc. 19 at 9).   Even under *Martinez*, however, Petitioner cannot show cause to excuse the procedural default of Claim Three because Petitioner still must establish that his underlying ineffective assistance claim is "substantial." *Martinez*, 132 S. Ct. at 1318-19. He has not met this requirement for overcoming the procedural default; Petitioner has failed to show that his underlying ineffective assistance claim has "some merit." *Id.* at

1318.

Petitioner's argument that counsel failed to file a motion to dismiss on speedy trial grounds is refuted by the record.   On February 9, 1995, counsel filed a "Motion to Dismiss on Constitutional Speedy Trial Grounds" (Ex. 5).   On the same date, counsel filed a motion for discharge under Florida's speedy trial rule (Ex. 6).   On April 4, 1995, a hearing was held on the motions (Ex. 16).   The trial judge denied the motions, finding that Petitioner had waived his speedy trial rights (Ex. 9 at 16).   To the extent that Petitioner now asserts that counsel should have filed a motion to dismiss at an earlier time, a review of the record shows that on January 18, 1994, March 28, 1994, and August 31, 1994, Petitioner had waived his speedy trial rights (Ex. 2; Ex. 3; Ex. 4).

Because the record shows that, contrary to Petitioner's current assertion, trial counsel did file a motion to dismiss on speedy trial grounds, he (Petitioner) has failed to show that Claim Three is "substantial" so as to excuse his procedural default of this claim. Furthermore, Petitioner has not shown that he is entitled to the fundamental miscarriage of justice exception.   Claim Three is dismissed as unexhausted and procedurally barred.

### D.   Claim Four

Petitioner asserts that trial counsel was ineffective for advising him to reject a plea offer of thirty years in prison (Doc. 1 at 12).   Petitioner asserts that he was prejudiced by counsel's failure because he received a life sentence "greater in length than originally contemplated by the State." *Id.*

Respondent asserts that this claim is unexhausted and procedurally defaulted because Petitioner did not raise it in a timely filed Rule 3.850 motion and appeal the denial (Doc. 14 at 15).   Instead, Petitioner attempted to raise this claim in his third Rule 3.850

motion which was dismissed by the post-conviction court as being untimely filed (Ex. 32). In reply, Petitioner concedes that the claim is unexhausted, but argues that the lack of exhaustion is excused by *Martinez* (Doc. 19 at 10).   Even under *Martinez*, however, a petitioner cannot show cause to excuse a procedural default of a claim unless he establishes that his underlying ineffective assistance claim has some merit.   Petitioner does not meet this burden.

In his third Rule 3.850 motion, Petitioner argued that "the most sever[e] sentence the defendant thought he faced was life with the possibility of parole after 25 years, which is the sentence the defendant has at this time according to the court's oral pronouncement and written documents." (Ex. 31 at 6).   Petitioner claimed that he decided to go to trial only because he was under the impression that he would be eligible for parole after 25 years if found guilty at trial. *Id.*    Indeed, a review of the record shows that life in prison with the possibility of parole after 25 years is the sentence that Petitioner received on his first degree murder conviction, and it is the sentence recognized by the appellate court. *See* Wilson, 56 So. 3d at 913 ("Wilson received a life sentence with a twenty-five-year minimum mandatory.").

Petitioner now asserts that after consulting with an inmate law clerk in 2005, he discovered that "parole for inmates was terminated in July of 1983" and that "[a]ll life sentences given after that date were natural life sentences." (Ex. 31 at 7).   Petitioner references Florida Statute § 775.082(1) which was amended in 1994 to abolish the possibility of parole for persons convicted of capital felonies. *Id.* Petitioner filed his untimely third Rule 3.850 motion thereafter, contending that it was the "newly discovered evidence" of his ineligibility for parole that prompted the untimely Rule 3.850 motion.

Upon review of the applicable Florida law and the state court record, this Court concludes that Petitioner's misapprehension about Florida Statute § 775.082(1) prompted this claim.

Petitioner was convicted in 1995 of a murder that occurred on December 20, 1992. At the time of the murder in 1992, Florida Statute § 775.082(1) provided in pertinent part that a person who has been convicted of a capital felony and is sentenced to life imprisonment "shall be required to serve no less than 25 years before becoming eligible for parole[.]" Fla. Stat. § 775.082(a) (1992).   In 1994, § 775.082 was amended to abolish parole eligibility for defendants convicted of murder in the first degree.   *See* 1994 Fla. Laws ch. 94-288.   However, in *In re Standard Jury Instructions in Criminal Cases*, 678 So. 2d 1224 (Fla. 1996), the Florida Supreme Court recognized that the 1994 amendment applies only to offenses committed on or after May 25, 1994. *Id.*   Therefore, because Petitioner committed his crime prior to that date, he was not eligible for, and did not receive, a life sentence without the possibility of parole. *See also Hudson v. State*, 708 So.2d 256 (Fla. 1998) (the 1994 amendment to § 775.082(1) cannot be applied retroactively); *Craig v. State*, 685 So.2d 1224, 1230 n. 12 (Fla. 1996) (because the defendant committed his crime in 1981, he was not eligible to receive a life sentence without the possibility of parole); *Gore v. State*, 706 So.2d 1328 (Fla. 1997); *Orme v. State*, 25 So. 3d 536 (Fla. 2009) (same).

Petitioner was advised of the penalties he faced if he proceeded to trial (T. at 24). Likewise, Petitioner admits that it was the possibility of parole after twenty-five years that prompted him to reject the state's thirty-year offer and proceed to trial.   Although Petitioner now asserts that "his going to trial [was] involuntary" because he did not realize that he was ineligible for parole, his assertion is based upon his misunderstanding of

Florida law; because his crime was committed in 1992, Petitioner *is* eligible for parole after twenty-five years.   Therefore, Petitioner's claim lacks a basis in fact and is not "substantial" under *Martinez* so as to excuse his procedural default of Claim Four.   Nor has Petitioner presented new and reliable evidence to demonstrate that he is "actually innocent" of first degree murder.   Accordingly, Claim Four is dismissed as unexhausted and procedurally barred.

### E.    Claim Five

Petitioner asserts that his convictions for first degree premeditated murder and first degree felony murder violate double jeopardy principles (Doc. 1 at 17).   Specifically, Petitioner asserts that "he was unconstitutionally indicted and found guilty of both first-degree premeditated and felony murder stemming from a single death." *Id.*   Petitioner raised this issue in his first motion to correct an illegal sentence (Ex. 34).   The post-conviction denied the claim noting that ""the record conclusively reflects that counts I and II were merged." (Ex. 35).   Petitioner appealed the trial court's rejection of this claim, and the Second District Court of Appeal noted that "[Petitioner] was originally charged under alternative theories with first-degree premeditated murder and first-degree felony murder of the same victim.   When the jury returned a guilty verdict under both theories, the convictions were merged to reflect one count of first-degree murder, for which [Petitioner] received a life sentence with a twenty-five-year minimum mandatory." *Wilson*, 56 So. 3d 912, 913 (Fla. 2d DCA 2011).   The appellate court did recognize that a mistake had been made in the written judgment and sentence:

> At resentencing, the court specifically stated that it was sentencing Wilson to life on his merged convictions for first-degree murder. The court's written order also reflects the imposition of a single life sentence on these merged counts.

> Wilson's life sentence was orally pronounced to run concurrently with his fifteen-year sentence for robbery with a firearm. The written judgment and sentence entered after resentencing do not reflect that the first-degree premeditated and first-degree felony murder convictions were merged. Rather, on the face of the written judgment and sentence it appears that Wilson is serving two life sentences on two separate first-degree murder convictions. Additionally, the sentences do not reflect that they were designated to run concurrently. There is nothing in the record to suggest that these were anything more than clerical errors. Accordingly, we affirm all aspects of Wilson's sentences as orally imposed but remand for the trial court to enter written judgments and sentences that correctly reflect a single life sentence for the merged convictions and reflect that his life sentence and fifteen-year sentence are to run concurrently.

*Id.* The corrected judgment reflects that Petitioner's convictions for first degree premeditated murder and felony murder were merged (Ex. 37).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides in relevant part that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V.   The Double Jeopardy Clause protects defendants from: (1) a prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 380–81 (1989).

Here, Petitioner asserts a Double Jeopardy violation, presumably because he believes that he received multiple punishments for the murder of one victim.   However, the record conclusively shows that although the jury returned a guilty verdict for both felony murder and first degree murder (Ex. 11), at sentencing the counts were merged and Petitioner was only sentenced for one count of first degree murder.   Therefore, the post-conviction court's decision was neither contrary to, nor involved an unreasonable application of clearly established federal law.   Further, the post-conviction court did not

apply an unreasonable determination of facts in light of the evidence presented in the state court proceeding. Petitioner is denied relief on Claim Five. 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    Certificate of Appealability[11]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General and the State of Florida are **DISMISSED** from

---

[11]  Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

this action as named Respondents;

2.      The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Joseph L.

Wilson (Doc. 1) is **DENIED**;

3.      This case is **DISMISSED** with prejudice;

4.      Petitioner is **DENIED** a certificate of appealability; and

5.      The Clerk of Court is directed to terminate any pending motions, enter

judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 19th day of December, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: All Parties of Record